IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| GREGORY KLINE and CHERRIE KLINE, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-513 |
| | ) | |
| ZIMMER HOLDINGS, INC., et al., | ) | |
| Defendants. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

On August 29, 2014, the defendants, Zimmer Holdings, Inc., Zimmer, Inc., and Zimmer

US, Inc. (collectively "defendants" or "Zimmer"), filed a motion for summary judgment (ECF

No. 47), in which they argued that all remaining claims brought by plaintiffs Gregory Kline and

Cherrie Kline (collectively, "plaintiffs") arising out of injuries sustained by Gregory Kline from

an allegedly defective hip replacement component manufactured by defendants should be

dismissed. They also filed a motion <u>in</u> <u>limine</u> to exclude specific opinions of plaintiffs' expert

witnesses (ECF No. 45). On November 3, 2014, a Report and Recommendation (ECF No. 58)

was filed by the magistrate judge to whom this case was referred for pretrial proceedings, in

which the magistrate judge recommended that defendants' motion for summary judgment be

granted and that the motion <u>in</u> <u>limine</u> be dismissed as moot.

During the objections period, plaintiffs indicated that they wished to submit "further

evidence" in opposition to the motion for summary judgment. On December 19, 2014, the

matter was recommitted and returned to the magistrate judge to consider whether to accept

further evidence (ECF No. 65). On January 5, 2015, the magistrate judge entered an order

vacating his Report and Recommendation, dismissing the motion for summary judgment and motion in limine without prejudice and directing the parties to re-brief the matter with all supporting documents on the schedule provided (ECF No. 69).

On January 20, 2015, defendants filed an amended motion for summary judgment (ECF No. 70) and an amended motion in limine (ECF No. 74). On February 3, 2015, plaintiffs filed briefs in opposition (ECF Nos. 78, 81). On February 10, 2015, defendants filed a reply brief with respect to the summary judgment motion (ECF No. 82), as well as a motion to strike the affidavits of Mari Truman ("Ms. Truman") and Dr. Nicholas Sotereanos ("Dr. Sotereanos") (ECF No. 84) that plaintiffs submitted with their opposition. On February 18, 2015, plaintiffs filed their brief in opposition to the motion to strike (ECF No. 87).

On February 27, 2015, the magistrate judge filed a second Report and Recommendation (ECF No. 88), in which he again recommended that the motion for summary judgment be granted and that the motion in limine be dismissed as moot. He further recommended that the motion to strike be denied, but that some of the statements in the affidavits of Ms. Truman and Dr. Sotereanos be disregarded. The parties were again provided with time in which to object and after motions for extensions of time were granted, plaintiffs filed their objections (ECF No. 91) on March 20, 2015, and defendants filed their response (ECF No. 94) on April 2, 2015.

This case involves claims about whether a product—the Zimmer M/L Taper Femoral Stem with Kinectiv Technology—is defective with respect to either its design or warnings. There are three state-law claims remaining: (1) negligent design and (2) negligent failure to warn claims asserted by George Kline, and (3) a loss of consortium claim asserted by Cherrie Kline. Under Pennsylvania law, expert testimony must be presented to establish the design defect and

failure to warn claims. See Oddi v. Ford Motor Co., 234 F.3d 136, 159 (3d Cir. 2000) (stating that expert testimony "is generally required in a products liability case where a defect is alleged" unless the defect is obvious and within the comprehension of the average juror); Burton v. Danek Med., Inc., Civ. No. 95-5565, 1999 WL 118020, at *8 (E.D. Pa. Mar. 1, 1999) ("Generally, expert testimony is required to determine the adequacy of the warning provided to the medical community by the manufacturer of a prescription product."); Demmler v. SmithKline Beecham Corp., 671 A.2d 1151, 1154 (Pa. Super. Ct. 1996) (same). Here, plaintiffs rely on the expert opinion of Ms. Truman to establish the negligent design claim. Ms. Truman, however, admitted during her deposition that her opinion was that Zimmer could have, and should have, provided better warnings (not design) about using their product in certain patients. Plaintiffs also rely on the testimony of Dr. Sotereanos, a treating physician and consultant to Zimmer, to establish the design defect and failure to warn claims. Dr. Sotereanos, however, was not identified as an expert and did not submit an expert report with respect to device design or warnings.

If summary judgment is entered in favor of Zimmer with respect to George Kline's claims, summary judgment must also be granted with respect to Cherrie Kline's loss of consortium claim. Spowal v. ITW Food Equip. Grp. LLC, 943 F. Supp. 2d 550, 564 (W.D. Pa. 2013) ("'Loss of consortium is a derivative claim which depends for its sustenance upon a viable tort claim of the spouse.'" (quoting Reiff v. Convergent Techs., 957 F.Supp. 573, 584 (D.N.J. 1997))).

In their objections, plaintiffs contend that the magistrate judge committed error in the following respects: he refused to consider the "unique" facts involving Dr. Sotereanos (specifically his involvement with the design team of the device at issue) and did not accept the

doctor's statements concerning the design of the device because he was not designated as an expert; he refused to consider statements made by Ms. Truman in her affidavit about design defects because he erroneously concluded that they conflicted with her earlier sworn deposition testimony; he did not accept Dr. Koss's opinion as an expert opinion about design defects; and he refused to consider proposed testimony about Robert Lesher, another patient of Dr. Sotereanos who also suffered a fracture of the same Zimmer hip implant device. Defendants respond that the magistrate judge properly disregarded statements made by Dr. Sotereanos outside of his role as a treating physician because he was not designated as an expert in design defects or warnings; the magistrate judge properly concluded that portions of Ms. Truman's affidavit attempted to revive a design defect theory that she abandoned at her deposition; and the magistrate judge properly refused to consider testimony about Mr. Lesher because plaintiffs did not demonstrate that the circumstances were "substantially similar." In addition, defendants note that even if evidence related to Mr. Lesher were considered, it would not alter the outcome because plaintiffs still lacked admissible expert testimony that alleged design defects caused Mr. Kline's injuries and because Dr. Sotereanos admitted that he never read the warnings on Zimmer's package insert, which was fatal to plaintiffs' failure to warn claim.

As an initial matter, it is noted that plaintiffs attached to their objections three exhibits that were not previously made part of the record, specifically Zimmer's "marketing materials" (ECF No. 91 Ex. B), Zimmer's "surgical technique" (ECF No. 91 Ex. C), and Dr. Sotereanos's case study (ECF No. 91 Ex. D). No permission was sought to submit these additional materials, despite the court holding on December 18, 2014, that it would not permit the unilateral supplementation of the record (ECF No. 62), but would instead direct plaintiffs to seek leave for

appropriate relief before the magistrate judge, and despite the magistrate judge's explicit direction to the parties to re-submit the motion and response with all supporting documents (ECF No. 69). Therefore, the additional materials submitted by plaintiffs with their objections will not be considered and will be stricken from the record.

With respect to plaintiffs' objections, the court concludes that they are without merit. Plaintiffs assert that the magistrate judge engaged in credibility determinations with respect to the necessary expert opinions. The magistrate judge, however, did not address credibility; rather, the magistrate judge concluded that plaintiffs did not adduce sufficient evidence for a jury to render a verdict in their favor. As defendants observe, plaintiffs offer no support for their argument concerning Dr. Sotereanos's "unique" status and provide no reason why his testimony should not be limited to that of a treating physician. However unique Dr. Sotereanos's relationship with Zimmer was, he was only identified as a treating physician and his testimony beyond the treatment of George Kline and his expertise in that capacity cannot be considered. A treating physician need not produce an expert report to give opinion testimony based upon the physician's examination, diagnosis, and treatment of a patient. Mracek v. Bryn Mawr Hosp., 610 F. Supp. 2d 401, 406 (E.D. Pa. 2009). When, however, the physician's opinion testimony is based upon information outside the physician's treatment of the patient, the physician is "retained or specially employed to provide expert testimony in the case," and an expert report is required. FED. R. CIV. P. 26(a)(2)(B) (requiring testifying expert witness to disclose an expert report containing "a complete statement of all opinions the witness will express" among other things); see Bucher v. Gainey Transp. Serv. of Ind., Inc., 167 F.R.D. 387, 390 (M.D. Pa. 1996) ("[I]f the plaintiffs' experts are to testify to those things which [are] not based on their observations during

the course of treating [the plaintiff's] illness, then the expert needs to be identified and thereby submit an expert report." (internal quotation marks omitted)).

Dr. Sotereanos cannot testify about what Zimmer "knew" or how Zimmer notified "all physicians" about product updates. Dr. Sotereanos's testimony about how Zimmer notified him about the product he used on George Kline falls within his personal knowledge and within the confines of his treatment of George Kline. Such testimony is not expert testimony. Plaintiffs' attempt to use the testimony of Dr. Sotereanos to otherwise support their negligence claims, however, falls outside the physician's examination, diagnosis, and treatment of George Kline and is expert testimony. Dr. Sotereanos was not identified as an expert witness to testify about the design of the device at issue. While Dr. Sotereanos may have been a consultant to Zimmer about the device at issue, there is no record that he is an expert in the design of or warning about the product or that his consulting services enabled him to give an opinion as a design or warnings expert. He has some background information concerning Zimmer, but there is an insufficient record for this court to find him to be an appropriate witness to support plaintiffs' claims where he would be required to submit an expert report in order to proffer such opinions. There was no identification of his qualifications to be a design or warnings expert, he was not designated as such, and he did not submit an expert report about design defects or warnings. Dr. Sotereanos may testify only as a treating physician, thus limiting his testimony to his treatment of George Kline, and any opinions based upon the examination, diagnosis, and treatment of that patient. Dr. Sotereanos cannot proffer expert testimony in support of the design defect or failure to warn claims.

With respect to Ms. Truman, plaintiffs argue that they "cannot fathom why Ms. Truman's statement that this is a mostly warnings defect case is given such colossal weight that it negates a sworn affidavit, direct testimony in response to Defense counsel asking for her design defect opinion, a lengthy written report and agreement by Defendants' own expert." (ECF No. 91 at 9.) As defendants note and as explained in detail in the Report and Recommendation, Ms. Truman's affidavit (ECF No. 80 Ex. L), which was signed on November 26, 2014, conflicts with her June 9, 2014 deposition testimony (ECF No. 49 Ex. 5) by attempting to revive a design defect theory that she only briefly discussed in her expert report and then retreated from at her deposition. (ECF No. 88 at 25, 30, 31.) It is appropriate to disregard her affidavit pursuant to the sham affidavit doctrine.

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). "[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." Id. The Court of Appeals for the Third Circuit has set forth a "flexible approach" for determining whether to apply the sham affidavit doctrine. Id. When independent evidence in the record explains the contradiction between the deposition testimony and affidavit—such as the affiant was confused or not possessing all the relevant facts during the deposition—courts generally do not consider the affidavit a sham. Id. When, however, a party does not explain the contradiction, the court may appropriately disregard the affidavit. Id.

In the Report and Recommendation, the magistrate judge addressed the sham affidavit doctrine and explained why it was applicable to the opinion about design defect set forth in Ms. Truman's affidavit:

> Ms. Truman's deposition testimony retreated from her expert report insofar as it alleged a design defect theory, and thus she cannot refer back to her expert report in her affidavit to support a design defect claim that she did not endorse at her deposition (Truman Aff. ¶¶ 1-4). In addition, her affidavit stated that she "opined" that the warnings in the package insert were defective in various ways (Truman Aff. ¶ 5), but she cites no place in her deposition or expert report where this previous opinion can be found.

(ECF No. 88, at 25 (footnote omitted).)  The court agrees with the magistrate judge's analysis and concludes that the opinion in Ms. Truman's affidavit about design defect is precluded by the sham affidavit doctrine.   At her deposition, Ms. Truman consistently, carefully, and clearly set forth her opinion that the product, as designed, was not defective, but that additional testing of the device under conditions representative of "highly active, high demand" and overweight patients could have been used to issue better, "more aggressive" warnings to doctors treating this kind of patient. (ECF No. 49-6 (Truman Depo.) at 170, 176-77, 187, 194, 196, 197-205, 211-14, 222.)   Ms. Truman's opinion is not manufactured from a stray comment during the deposition taken out of context; instead, the entirety of Ms. Truman's deposition testimony makes it clear that her opinion was one of insufficient testing leading to insufficient warnings, making her affidavit stating an opinion to the contrary inappropriate.  No explanation for the contradiction is given.  Therefore, the Report and Recommendation is correct in concluding that Ms. Truman's affidavit cannot be considered in opposition to defendants' motion for summary judgment. (ECF No. 88 at 30.)  Ms. Truman cannot proffer expert testimony about the design defect claim. Although Ms. Truman can offer an opinion with respect to the failure to warn claim, as the

magistrate judge noted, Ms. Truman conceded at her deposition that Zimmer's warnings were accurate, and although expressing a desire for "more aggressive" warnings, she did not opine that the warnings given were inadequate. (ECF No. 88 at 35.)

Plaintiffs take issue with the magistrate judge not recognizing Dr. Koss as an expert with respect to the negligent design defect claim. Plaintiffs argue Dr. Koss was testifying about why titanium should not have been used in the device in issue. The magistrate judge, however, correctly noted:

> Dr. Koss stated that he was not asked to review or comment on the design of the device (Koss Dep. at 33:19-22); that he is "not an expert in design" (Koss Dep. at 108:8); that he is "not in a position to judge the design [or] the choice of design" of the device (Koss Dep. at 101:3-4); and that he has no opinion on the design of the device in his report (Koss Dep. at 101:21-102:6). When asked if Zimmer should not have used this titanium alloy in making the device, he responded "I don't think I can adequately answer that" (Koss Dep. at 103:7) and, although he speculated that "maybe" Zimmer should have used a different material, he immediately stated that "I have no idea what that different material would be," that he did not know if a different material would be better and he concluded "I don't think I'm in any position—I'm just a metallurgist identifying a cause of failure." (Koss Dep. at 103:15-104:1.)

(ECF No. 88, at 30-31.) In this matter, Dr. Koss's opinion goes to causation, not negligent design.

Without the opinion of an expert, plaintiffs cannot prevail on George Kline's negligent design claim. Although Ms. Truman can proffer expert testimony with respect to the failure to warn claim, as set forth above, her testimony does not support plaintiffs' claim, and, in any event, the claim suffers from other legal and evidentiary defects, as set forth by the magistrate judge in the Report and Recommendation. (ECF No. 88 at 31-35.) The court identifies no error in the magistrate judge's findings in this respect.

Dr. Sotoreanos' and Ms. Truman's affidavit testimony about Robert Lesher, another patient whose Zimmer hip implant allegedly failed, does not change the result in this case. Plaintiffs did not explain how Mr. Lesher's situation is "substantially similar" to George Kline's situation, or how evidence about Mr. Lesher's injuries could cure the Kline's inability to submit admissible, relevant expert testimony to the jury.

Defendants' amended motion for summary judgment will be granted, the amended motion in limine will be denied as moot, and the motion to strike will be denied. An appropriate order will be entered contemporaneously with this opinion.

Dated: July 6, 2015

/s/ *Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge